■ In the Matter of UMAR HARVEY, Petitioner, v ALBERT PRACK, Respondent. [39 NYS3d 471]—

Proceeding pursuant to CPLR article 78 to review a determi-

nation of the Acting Director of Special Housing/Inmate Disciplinary Program, on behalf of Brian Fischer, as Commissioner of the New York State Department of Corrections and Community Supervision, dated June 16, 2014, which affirmed a determination of a hearing officer dated April 14, 2014, made after a tier III disciplinary hearing, that the petitioner was guilty of violating prison disciplinary rule 113.10 (7 NYCRR 270.2 [B] [14] [i]), and imposed penalties.

Adjudged that the petition is granted, without costs or disbursements, the determination is annulled, the respondent is directed to expunge all references to the determination from the petitioner's institutional record, and the matter is remitted to the respondent for further proceedings in accordance herewith, if the respondent be so advised.

Following a disciplinary hearing, the hearing officer found the petitioner, an inmate in the custody of the New York State Department of Corrections and Community Supervision (hereinafter DOC), guilty of violating prison disciplinary rule 113.10, which, inter alia, prohibits an inmate from possessing any item that may be classified as a weapon (7 NYCRR 270.2 [B] [14] [i]). In a determination dated June 16, 2014, the respondent affirmed the hearing officer's determination, and the petitioner commenced this proceeding pursuant to CPLR article 78 to challenge the respondent's determination.

By order dated January 26, 2015, the Supreme Court, Dutchess County, transferred the proceeding to this Court pursuant to CPLR 7804 (g). Although the Supreme Court should have disposed of the proceeding by addressing the petitioner's argument that the determination was affected by an error of law, specifically, that it was rendered in violation of due process requirements (see CPLR 7804 [g]), since the full record is now before us, we will decide the proceeding on the merits in the interest of judicial economy (see Matter of Burgess v Bellnier, 138 AD3d 989, 990 [2016]; Matter of Tolliver v Fischer, 68 AD3d 884, 885 [2009]).

According to the misbehavior report, correction officer D'Angelico was directed by sergeant Kaufman to perform a cell search of J-3-30, where the petitioner was housed, and while conducting the search he located a metal rod approximately 6 inches long and 1/8 inch wide, sharpened to a point, on the inside top lip of the petitioner's locker. In a disciplinary report, sergeant Kaufman stated that he authorized a special inspection of the cell which housed the petitioner based on information from a confidential informant.

The misbehavior report and the testimony of correction offi-

cer D'Angelico constituted substantial evidence to support the hearing officer's determination that the petitioner was guilty of violating prison disciplinary rule 113.10 (*see Matter of Nieves v Annucci*, 123 AD3d 1368 [2014]; *Matter of Muller v Fischer*, 62 AD3d 1191 [2009]). However, under the particular circumstances of this case, the determination must be annulled because the petitioner did not receive a fair hearing.

At the beginning of the hearing, the petitioner stated that he did not receive a copy of the misbehavior report. The petitioner acknowledged that correction officer Saunders served him, but claimed that she served him with the wrong papers. Specifically, the petitioner argued that correction officer Saunders served him with two "assistance" forms (ie., a form on which a DOC employee is selected to assist an inmate in, among other things, interviewing witnesses and obtaining documentary evidence). One of these forms was his and the other was for another inmate, Murphy. The hearing officer had a lieutenant investigate the matter. After the lieutenant viewed a videotape that purportedly showed the petitioner getting served, and after viewing a log book entry indicating that the petitioner was served, the lieutenant issued a ticket to the petitioner for lying.

At the hearing, the petitioner objected to being issued a ticket for lying. According to the petitioner, he did not deny that correction officer Saunders served him with papers, but maintained that she mistakenly served the petitioner's misbehavior report on Murphy. The petitioner asked for the production of Murphy's assistance form, and argued that his signature was on Murphy's assistance form. The petitioner argued that his signature on Murphy's assistance form would establish that he was not served with the misbehavior report and that he was not lying about that fact. The hearing officer denied the petitioner's request for the production of Murphy's assistance form. This was error, as Murphy's assistance form could have supported the petitioner's claim that he was not lying and, by extension, improved his credibility in the eyes of the hearing officer. The fact that the petitioner was issued a ticket for lying based on a procedural objection he raised at the hearing necessarily had an impact on the hearing officer's assessment of the petitioner's credibility.

Furthermore, at the hearing, the petitioner did not deny that a weapon was found in his cell locker, but asserted that the weapon was planted there by another inmate, Orlando Ayala. The petitioner explained that he and Ayala knew each other from another prison and did not get along, and that Ayala owed

other prisoners 10 to 15 packs of cigarettes. According to the petitioner, Ayala "set [him] up" so that Ayala could go into protective custody. The petitioner also asserted that the weapon was recovered from his cell while he was in the yard for late-night recreation, and that cell doors remain open during that time. The petitioner maintained that Ayala was placed into protective custody when he accused the petitioner of having a weapon in his cell.

The petitioner further argued that he had spent 24 years in prison, had three years left until being reviewed by the parole board, and already had a weapons charge. The petitioner further testified that if he received another weapons charge, he would have "another natural life bid." Moreover, the petitioner asserted that he had too much to lose by having a weapon in his cell, and was not "stupid enough" to place a weapon in a locker, which was the easiest place to find it.

Ayala refused to testify on the petitioner's behalf, but the hearing officer called Ayala as a witness. Ayala, who was not present at the hearing but testified as the hearing officer's witness via telephone, denied planting a weapon in the petitioner's cell. Ayala also testified that he knew nothing about a weapon being found in the petitioner's cell. During Ayala's testimony, the petitioner sought to ask Ayala why he moved from "J-Block" (i.e., the block where Ayala's and the petitioner's cells were), and why Ayala, who had been moved to J-Block to start alcohol and substance abuse treatment, had never started treatment. The petitioner also wanted to ask Ayala if he owed people money. The hearing officer did not ask those questions on the ground that they were irrevelant.

However, these questions were relevant to the petitioner's defense and should have been asked. The petitioner took the position that Ayala had a motive to plant a weapon in his cell, i.e., Ayala owed other prisoners money (or cigarettes), and, in order to escape from those prisoners, Ayala accused the petitioner of having a weapon so that Ayala would be placed into protective custody. Whether Ayala owed other prisoners money, and the reason why Ayala moved from J-Block, were relevant to this defense. Furthermore, the hearing officer did not allow the petitioner to ask sergeant Kaufman why he moved Ayala into protective custody. This question was relevant to the petitioner's defense as well. Since the hearing officer refused to ask these questions on the petitioner's behalf, there was virtually no testing of Ayala's credibility at the hearing.

A review of the record reveals that the hearing officer did not know who the confidential informant was. While the petitioner

claimed it was Ayala, the hearing officer did not know whether the confidential informant was Ayala. However, along with the answer to the CPLR article 78 petition, the respondent submitted a confidential free will statement dated March 18, 2014, four days after the petitioner's cell was searched and approximately one month before the hearing concluded, which revealed the identity of the confidential informant. While the confidential free will statement is before this Court, this crucial piece of evidence was not presented to the hearing officer.

Considering all of these circumstances, the petitioner did not receive a fair hearing (*see Matter of Cook v Coughlin*, 97 AD2d 663 [1983]). While a prison inmate facing a disciplinary hearing is not entitled to the same level of due process as a criminal defendant, there are minimum standards that must be met (*see Wolff v McDonnell*, 418 US 539, 555-557 [1974]; *Matter of Marshall v Fischer*, 103 AD3d 726 [2013]; *Matter of Stallone v Fischer*, 67 AD3d 125, 128 [2009]). Here, since the petitioner did not receive a fair hearing, the minimum due process standard was not met (*see Matter of Lopez v Selsky*, 5 AD3d 897 [2004]). Accordingly, the petition must be granted, the determination annulled, all references to the violation expunged from the petitioner's institutional record, and the matter remitted to the respondent for further proceedings consistent herewith, if the respondent be so advised (*see Matter of Marshall v Fischer*, 103 AD3d at 727).

In light of our determination, we need not reach the petitioner's remaining contentions. Hall, J.P., Cohen, Miller and Barros, JJ., concur.